IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ISRAEL RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-623 (JCC/JFA) |
| ) | |
| RESTON HOSPITAL CENTER, LLC, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Reston Hospital Center, LLC's ("RHC") Motion to Dismiss Plaintiff's First Amended Complaint. [Dkt. 16.] For the following reasons, the Court will deny RHC's motion to dismiss.

**I.  Background**

Israel Rodriguez ("Plaintiff" or "Rodriguez") brings this suit against RHC for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3730 *et. seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq*. The following facts are taken from Plaintiff's Amended Complaint and, for the purposes of this motion, are presumed true.

Rodriguez began his employment at RHC in 1995 as an x-ray technologist. Am. Compl. ¶ 6. In 2003, RHC promoted Rodriguez to Hospital Operations Imaging Manager, a position he held for more than ten years. *Id.* ¶¶ 7, 59. Rodriguez directly

1

supervised over 100 staff employees in this position and earned $97,000 per year. *Id.* ¶ 9.

As part of its accreditation, RHC is required to complete yearly competency assessments for all of its employees. Am. Compl. ¶ 11. The Joint Commission on the Accreditation of Healthcare Organizations ("JCAHO") conducts inspects every three years to ensure RHC's compliance. *Id.* ¶ 15. In fact, RHC risks losing its accreditation if yearly competencies are not completed. *Id.* ¶ 16. During monthly management meetings in 2013, Rodriguez learned that his direct supervisor and the Assistant Director of Radiology, Donald Bauer ("Bauer"), had not yet completed his competencies for the year. *Id.* ¶¶ 18-22. In early 2014, Debbie Simmons, the Director of Radiology and Rodriguez's second-in-line supervisor, confirmed that Bauer had not done so. *Id.* ¶ 24. Then, in February 2014, Bauer approached Plaintiff, stated that he had not yet completed his 2013 competencies, and asked Rodriguez to backdate several of the competencies to 2013. *Id.* ¶ 26. Rodriguez refused. *Id.* ¶ 27. After learning that several other employees were also asked to backdate competencies, Rodriguez approached them and told them that he refused to sign the backdated assessments and advised them to do the same. *Id.* ¶ 42.

In March 2014, RHC posted an opening for a staff technologist in Rodriguez's department. Am. Compl. ¶ 43.

2

Rodriguez's wife, Sheila, also worked at RHC, and she informed a former colleague, Belinda Hooven-Fossie ("Hooven-Fossie"), of the opening. *Id.* ¶ 44. Hooven-Fossie applied and did well during the interview, but Rodriguez removed her from consideration about discovering that another hospital had previously terminated her.[1] *Id.* ¶ 46. Once a representative from Human Resources determined that Hooven-Fossie was, in fact, still hirable under RHC policy, Rodriguez prepared a hire sheet for her and brought it to Simmons for approval. *Id.* ¶¶ 48-49. Before a hiring decision was made, however, another technologist, Nicole Pestell ("Pestell"), asked Rodriguez about the open position. *Id.* ¶ 53. He told her that it required weekend hours. *Id.* ¶ 54. Pestell was eventually hired. *Id.* ¶ 55. When the hiring process concluded, Simmons initiated an investigation into Rodriguez's conduct regarding the open position, alleging that Rodriguez discouraged Pestell from applying in order to get a referral bonus for Hooven-Fossie. *Id.* ¶¶ 56-57.

The following month, on April 15, 2014, Simmons demoted Rodriguez to Computed Tomography ("CT") Technologist, decreasing his salary by $10,000 per year. Am. Compl. ¶¶ 59-60. RHC's stated reason for the demotion was Rodriguez's attempt to

---

[1] RHC policy HR.OP.028 precluded hiring an individual who had been previously terminated. *See* Am. Compl. ¶ 47.

use his authority to hire an employee he had referred for an open position so that he could earn a referral bonus. *Id.* ¶¶ 50, 61. Additionally, RHC based its demotion decision on Rodriguez's alleged improper reporting of an incident of workplace violence earlier in 2014.[2] *Id.* ¶ 46.

Following his demotion, Rodriguez was required to register as a CT Technologist, which required completing 125 CT exams that were then signed off by another technologist, supervisor, or radiologist. Am. Compl. ¶¶ 78, 80. However, Plaintiff alleges that Simmons imposed more stringent requirements, allowing only a radiologist to sign off on his exams. *Id.* ¶ 81. He began his new position on April 21, 2014. *Id.* ¶ 82. Plaintiff alleges that he was provided with only six weeks of training, rather than eight weeks, and placed on the midnight shift, which limited his ability to interact with patients to complete the exams required for his credentials. *Id.* ¶¶ 83-85. In addition, Plaintiff alleges that he provided completed CT exams to Simmons to review in late August 2014, but she never reviewed or returned the exams. *Id.* ¶¶ 86, 88-94.

---

[2] In early 2014 during a Sunday night shift, two Diagnostic Technologists got into a physical altercation. Simmons was the administrator on call, but she could not be reached. Rodriguez's wife, Sheila, witnessed the incident and told Rodriguez when she got home. Rodriguez went to Human Resources to report the incident, and then reported the incident to Bauer. Bauer and Rodriguez tried to reach Simmons together, but were unsuccessful. Later, Simmons criticized Rodriguez for reporting an incident that he did not personally witness. Am. Compl. ¶¶ 63-70.

On September 17, 2014, Rodriguez emailed Simmons to notify her of some ongoing shoulder issues. Am. Compl. ¶ 95. He informed Simmons that he would undergo shoulder surgery on October 2, 2014, and needed to take several months of FMLA leave to recover. *Id.* ¶ 96. Following his surgery and recovery, Rodriguez received approval to return to work from his doctor on February 24, 2015. *Id.* ¶ 102. However, Simmons required Rodriguez to complete a "return to work" plan prior to coming back to RHC, which "shocked" Rodriguez as it was "not typical at RHC." *Id.* ¶¶ 103-04. Nevertheless, Rodriguez returned to work on February 25, 2015—one day later—after completing the required plan. *Id.* ¶ 107.

In late March 2015, Rodriguez turned in additional CT exams for his application to re-register as a CT technologist. Am. Compl. ¶¶ 108-09. He continued to ask Simmons to return the exams he had submitted to her in August 2014 so that he could use them to meet his credentialing requirements. *Id.* ¶ 112. Simmons never did so. *Id.* ¶ 113.

RHC terminated Rodriguez on April 25, 2015. Am. Compl. ¶ 110. RHC's reason for his termination was that Rodriguez had not obtained proper credentials for the CT position. *Id.* ¶ 111.

Plaintiff initiated the instant case on June 6, 2016. [Dkt. 1.] The Amended Complaint alleges: (1) wrongful discharge

involving retaliation under the FMLA; (2) interference under the FMLA; and (3) retaliatory discharge under the FCA.  [*Id.*]  On November 4, 2016, Defendant filed the instant motion to dismiss.  [Dkt. 16.]  Plaintiff filed his opposition on November 15, 2016, to which Defendant replied on November 21, 2016.  [Dkts. 19, 21.]  Oral argument was held on February 22, 2017.  This motion is now ripe for disposition.

## II.  Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id.* Based upon these allegations, the court must determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. *Id.* Legal conclusions couched as factual allegations are not sufficient, *Twombly*, 550 U.S. at 555, nor are "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The plaintiff, however, does not have to show a likelihood of success; rather, the complaint must merely allege - directly or indirectly - each element of a "viable legal theory." *Twombly*, 550 U.S. at 562-63.

At the motion to dismiss stage, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Iqbal*, 556 U.S. at 678. Generally, a district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). It may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In addition, the court may consider documents attached to the defendant's motion to dismiss

7

if those documents are central to the plaintiff's claim or are "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006).

### III. Analysis

A.   Family Medical Leave Act Claims

    *1.   Count I: Wrongful Discharge – Retaliation*

Plaintiff's first claim in his Amended Complaint is based upon a retaliatory wrongful discharge, in violation of the FMLA. To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006) (internal quotation and citation omitted). Such a claim also "requires proof of retaliatory intent." *Ainsworth v. Loudoun Cnty. School Bd.*, 851 F. Supp. 2d 963, 977 (E.D. Va. 2012) (internal quotation omitted).

Plaintiff's Amended Complaint alleges that he informed RHC of his ongoing shoulder issues on or about September 17, 2014. Am. Compl. ¶ 95. At that time, he notified RHC that he needed to take medical leave for a scheduled shoulder surgery on October 2, 2014. *Id.* ¶¶ 96-97. Plaintiff spent the next few

months recovering. His doctor eventually cleared him to return to work on or about February 24, 2015. *Id.* ¶ 102. After informing RHC that he could return, however, Rodriguez was told by Simmons that he needed to complete a "return to work" plan. *Id.* ¶ 103. Plaintiff alleges that his "return to work" plan was the first of its kind in the radiology department for employees returning from medical or disability leave. *Id.* ¶ 105. He quickly obtained the necessary plan from his doctor and returned to work the following day: February 25, 2015. *Id.* ¶ 107. Less than sixty days after returning to work, RHC terminated Rodriguez. *Id.* ¶ 110.

Defendant argues that Plaintiff's Amended Complaint does not provide any factual allegations for an FMLA retaliation claim, but rather only recites the elements. Mem. in Supp. at 8. Moreover, Defendant asserts that Plaintiff's Amended Complaint is devoid of any allegations that RHC's conduct was intentional. *Id.* at 9.

Here, it is undisputed that Plaintiff engaged in a protected activity (taking FMLA leave) and that he experienced an adverse employment action (termination). Plaintiff has also alleged sufficient facts to establish a causal connection between his FMLA leave and his termination by RHC. *See Yashenko*, 446 F.3d at 551 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) ("While evidence as to

the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a *prima facie* case of causality.'")). Additionally, Plaintiff has provided sufficient factual allegations—such as the newly required "return to work" plan and his ultimate termination—to draw the reasonable inference of retaliatory intent.  Accordingly, the Court will deny Defendant's motion to dismiss Count I.

>    2.   *Count II: Interference*

Plaintiff's second claim in his Amended Complaint is for interference under the FMLA.  The necessary elements of an FMLA interference claim include: "(1) [the plaintiff] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) [the plaintiff] was entitled to leave under the FMLA; (4) [the plaintiff] gave the employer notice of [his] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [he] was entitled." *Ainsworth*, 851 F. Supp. 2d at 975 (internal citations omitted). Interference with an employee's FMLA leave can include "refusing to authorize FMLA leave, discouraging an employee from taking FMLA leave, and manipulating the work force to avoid responsibilities under the FMLA." *Battle v. City of Alexandria*, 2015 WL 1650246, at *4 (E.D. Va. Apr. 14, 2015) (referencing 29 C.F.R. § 825.220(b)).

10

In addition to the necessary elements, a claim of FMLA interference must also include proof that the plaintiff was prejudiced due to the employer's interference with his FMLA rights. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also* 29 U.S.C. § 2617(a)(1)(A)(i) (prejudice exists where an employee loses compensation or benefits "by reason of the violation" or "as a direct result of the violation"). Having successfully proved prejudice, an employer's liability will be limited to compensation and lost benefits "by reason of the violation," for other monetary losses sustained "as a direct result of the violation," and any "appropriate" equitable relief. *Ragsdale*, 535 U.S. at 89; 29 U.S.C. § 2617(a)(1)(A)(i).

Plaintiff's Amended Complaint alleges that RHC interfered with his FMLA rights by requiring him to complete a "return to work" plan after being cleared by his doctor to go back to work. Am. Compl. ¶¶ 102-03. Plaintiff alleges that this request "was not typical at RHC" and was, in fact, the first such requirement in the radiology department during the ten years he had worked there. *Id.* ¶¶ 104-06. As a result of this new requirement, Plaintiff was not able to return to work until the day after his doctor cleared him to do so. *Id.* ¶ 107. Additionally, the Amended Complaint alleges that RHC interfered with his rights by not adjusting the deadline to complete his credentialing for the CT tech position to take into account the

11

time he was on FMLA leave, by denying him access to exams he had submitted for consideration for his credentialing prior to his medical leave, and by terminating his employment. *Id.* ¶¶ 134-35, 137-38.

Defendant argues that requiring Plaintiff to complete a "return to work" plan does not amount to interference under the FMLA. Mem. in Supp. at 10. Even if it does qualify as interference, RHC asserts that the plan only delayed Plaintiff's return to work by a single day. *Id.* at 11. In addition, Defendant claims that whether or not RHC provided Plaintiff with the full six months to complete his credentialing "has no bearing on his entitlements under the FMLA or any inference by RHC." *Id.* Defendant also asserts that his ability to access his completed exams and participate in sufficient orientation and training are "completely unrelated" to his FMLA leave. *Id.* at 12-13. Finally, Defendant argues that when it terminated Rodriguez, his FMLA rights were not triggered, as he had not indicated a future plan to take FMLA leave. *Id.* at 14. Throughout its motion to dismiss, RHC asserts that Rodriguez suffered no prejudice and sustained no damages.

In the instant case, Plaintiff's Amended Complaint alleges sufficient facts from which the Court can plausibly infer that RHC interfered with his FMLA rights. Although RHC authorized Rodriguez's FMLA leave, it placed additional

12

requirements on him after he returned from leave that would discourage any employee from exercising his FMLA rights, including the imposition of a "return to work" plan and the decision not to extend his deadline to complete his credentialing to fully account for his FMLA leave.  Moreover, RHC's decision to fire Rodriguez was based upon his failure to complete 125 CT exams by the required deadline, even though Simmons had prevented Rodriguez from accessing some of his earlier completed exams to submit for consideration.  Both the "return to work" plan and Plaintiff's ultimate termination led to the loss of compensation and benefits for Plaintiff, establishing prejudice.  Collectively, RHC's alleged actions are sufficient to establish a plausible claim for relief under the FMLA for interference.[3]  The Court will therefore deny Defendant's motion to dismiss Count II.

B.   <u>False Claims Act Claim: Wrongful Discharge</u>

Count III of Plaintiff's Amended Complaint alleges retaliatory discharge in violation of the FCA, 31 U.S.C. § 3730(h).  When Congress passed the FCA, it sought to incentivize the reporting of government contractor fraud.  To accomplish this goal, Congress included in the FCA a whistleblower provision, which states the following:

---

[3] At the same time, the Court agrees with Defendant that Plaintiff has not pled sufficient facts to reasonably infer that the failure to provide sufficient orientation and training prior to his FMLA leave in some way impacted the exercise of his FMLA rights.

13

> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

*Id.* § 3730(h). To lay out a *prima facie* case for retaliation, a plaintiff must allege the following: (1) he took acts in furtherance of a *qui tam* suit or to stop a violation (*i.e.*, he engaged in a protected activity); (2) his employer knew of these acts (the notice element); and (3) his employer took adverse action against him. *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 343 (4th Cir. 2010). "Importantly, [at the motion to dismiss stage,] a plaintiff need not prove an underlying FCA violation because, as the Supreme Court has explained, § 3730(h) protects an employee's conduct 'even if the target of an investigation or action to be filed was innocent.'" *Nifong v. SOC, LLC*, 190 F. Supp. 3d 549, 556 (E.D. Va. 2016) (citing *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel Wilson*, 545 U.S. 409, 416 (2005)). "Moreover, the Fourth Circuit has made clear that a plaintiff's allegations need only meet the pleading standard set forth in Rule 8(a), not the heightened pleading standard set forth in Rule 9(b)." *Id.* (citing *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 433 (4th Cir. 2015) (internal citations omitted).

Defendant argues that Plaintiff's Amended Complaint relies upon too many inferential leaps and speculation to survive its motion to dismiss.  Mem. in Supp. at 18.  First, Defendant points out that Plaintiff is merely speculating about whether RHC would lose its accreditation if it failed to submit accurate competency assessments to JCAHO.  Repl. at 5.  Second, RHC claims that Plaintiff fails to allege that RHC did, in fact, submit any false records to JCAHO or that it submitted anything false to the federal government for certification or payment.  Mem. in Supp. at 17.  Finally, Defendant alleges that Rodriguez fails to identify any specific Condition of Participation ("CoP") in Medicare or Medicaid with which RHC has not complied.  Repl. at 5.  As a result, RHC asserts that there is too much attenuation between the backdated competency assessments and the government fisc to establish a potential FCA violation.  Mem. in Supp. at 18.  These arguments miss the mark, however, as they focus on whether RHC committed an actual FCA violation, rather than whether Plaintiff sufficiently laid out a case for retaliation under the FCA.

Contrary to Defendant's assertions, Plaintiff's Amended Complaint sufficiently alleges the elements required to state a plausible claim for relief.  Rodriguez attempted to stop a possible FCA violation when he complained about and opposed backdating competency assessments in February 2014 as part of

the hospital's accreditation process, engaging in protected activity.[4] Am. Compl. ¶ 143. Plaintiff wrote two letters to RHC, one in July 2014 and one in November 2014, describing the basis for RHC's possible FCA liability and his retaliation claim, providing the hospital with notice of both his conduct and his claims. *Id.* ¶¶ 160, 164. Finally, Plaintiff included factual allegations regarding adverse employment actions that RHC took against him, including demoting him in April 2014 and firing him a year later. *Id.* ¶¶ 59, 110. Accordingly, the Court will deny Defendant's motion to dismiss Count III.

### IV. Conclusion

For the reasons set forth above, the Court will deny Defendant's motion to dismiss in its entirety.

An appropriate order will follow.

|  |  |
|---|---|
|  | /s/ |
| February 28, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[4] He also advised other employees not to backdate these competencies. Am. Compl. ¶ 159.